## SEDAM v. UNITED STATES.

### No. 2115.

Circuit Court of Appeals, Tenth Circuit.

Dec. 3, 1940.

Karl V. King, of Salt Lake City, Utah, for appellant.

John S. Boyden, Asst. U. S. Atty., of Salt Lake City, Utah (Dan B. Shields, U. S. Atty., and Scott M. Matheson, Asst. U. S. Atty., both of Salt Lake City, Utah, on the brief), for appellee.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

PHILLIPS, Circuit Judge.

James Robert Sedam was indicted, tried, convicted, and sentenced for a violation of 18 U.S.C.A. § 400. He has appealed.

The facts are these: Sedam resides at Pocatello, Idaho, and Joy Mason resides at Idaho Falls, Idaho. In the latter part of October, 1939, Sedam met Miss Mason in Idaho Falls when he, another young man, and a young lady called at Miss Mason's home and asked her to go riding with them. Sedam was then 20 years of age, married, and the father of a child about three months of age. Miss Mason became 16 years of age on January 2, 1940. From the time he first met Miss Mason until the latter part of November, Sedam carried on an ardent courtship with her. He professed his love for her, many times proposed marriage, and induced her to accept from him and wear a diamond ring. In the latter part of November, Miss Mason learned that Sedam was a married man, returned the ring to him, and broke off her relations with him. About a week before the following Christmas, Sedam met her at a bowling alley and walked part way home with her. The next day he met her near her home and took her in a taxicab to the high school she was attending. Thereafter, she saw him by appointment practically every day. The subject of his marriage was again discussed and Sedam exhibited to Miss Mason a letter purporting to come from a public official in the state of Idaho, stating that Sedam's divorce would become final on December 1, 1939. The statement was false. No divorce proceeding had been instituted. Having induced Miss Mason to believe he was divorced, Sedam told her he had a job in the Philippine Islands and induced her to consent to accompany

him to Los Angeles with the understanding they would there be married. Miss Mason first protested about leaving without telling her parents but Sedam assured her it would be all right so to do, stating that after they had left Idaho Falls, they would telegraph or telephone her parents. On January 1, 1940, Sedam and Miss Mason went from Idaho Falls to Pocatello by taxicab, where it was understood they would take a plane to Yuma, Arizona, and there be married. On arriving at Pocatello, Sedam told Miss Mason he had learned the plane would not land at Pocatello on account of weather conditions. They then went to the Union Pacific Depot at Pocatello where Sedam purchased two tickets to Salt Lake City. They went by train to Salt Lake City, arriving there the morning of January 2. It was understood they would take a plane from Salt Lake City to Yuma. After arriving at Salt Lake City, Sedam took Miss Mason to Hotel Temple Square where he registered as Mr. and Mrs. J. R. Sinclair. He told her it would be better to register under an assumed name because "they would be looking for us." At the hotel, Sedam suggested intimate relations with Miss Mason but she rejected them, saying that since they were not married, it would not be right. They missed the plane out of Salt Lake City and went by a Union Pacific Railroad train to Los Angeles. On arriving at Los Angeles, Sedam registered at the New Rosslyn Hotel as "J. R. Sinclair and wife, Chicago, Illinois." They remained at the New Rosslyn Hotel from January 3 to January 6. On arriving at the New Rosslyn Hotel, Sedam told Miss Mason they would catch a plane the next morning to Yuma. That night they engaged in sexual intercourse at the New Rosslyn Hotel. Sedam continued to assure Miss Mason that they would go to Yuma and be married but kept putting it off, claiming he was waiting for baggage to arrive from Salt Lake City. On January 6, they left the New Rosslyn Hotel and went to the Angelus Hotel in Los Angeles where they remained one night. Sedam registered at the Angelus as J. R. and Mrs. Sinclair. Sedam introduced Miss Mason to friends as his wife. They occupied the same bed each night in the hotels in Los Angeles but engaged in sexual intercourse only on the first night. On Sunday, January 7, Sedam advised Miss Mason that the Federal Bureau of Investigation was after him for taking her away

and that he would have to go away and that she would have to go to the Belvedere Gardens. During the time they were at Salt Lake City and Los Angeles, Sedam at no time admitted to Miss Mason that he had not obtained a divorce, but continued to represent to her that they would eventually go to Yuma and be married. In statements made to the special agents of the Federal Bureau of Investigation, Sedam admitted that he proposed intimate relations with Miss Mason at the Hotel Temple Square and during each of the three nights they stayed at the New Rosslyn Hotel. He further stated that he attempted to have sexual intercourse with her the first night at the New Rosslyn Hotel but was unsuccessful in making any penetration. Sedam testified at the trial and denied that he had or attempted to have sexual intercourse with Miss Mason either at the Hotel Temple Square or the New Rosslyn Hotel. He admitted that he slept with her each night at the New Rosslyn Hotel. His explanation was that they occupied the same room to save expense. He also admitted that he knew he could not marry her without committing bigamy.

After Miss Mason had testified that Sedam had suggested intimate relations with her at the Hotel Temple Square in Salt Lake City and she had refused his importunities, the record discloses the following:

"Q. Well, did he put his arms around you?

"Mr. Carlson: If the court please, counsel should not do that. That is highly suggestive. That is putting the answer in the witness' mouth. For that reason, we object.

"The Court: She is a young girl, and I think it is permissible. But can't you go ahead and tell us, while you were up there in the room what he did and said to you, without any suggestion.

"The Witness: I can't remember all that.

"The Court: You do not have remember all of it. Tell us what you do remember.

"Just that there was a suggestion of it, and it was all put aside and let go at that.

He put his arms around me and kissed me and like that."

It is urged that the statement "she is a young girl, and I think it is permissible" was prejudicial and tended to lead the jury to conclude that something more occurred than the testimony showed. The contention is wholly without merit. Miss Mason was a young girl. She was placed in an embarrassing situation when called on to testify at a public trial respecting her relations with Sedam. The statement in no wise conveyed any improper inferences to the jury. Furthermore, no objection or exception was taken to the statement of the court and no motion was made for a mistrial.

During the trial, Sedam undertook to show that he intended to obtain a divorce from his wife and marry Miss Mason and to confirm that intention, sought to show his marital relations with his wife were not happy. After Sedam had testified that his marital relations were bad and that he and his wife were not getting along together, the court sustained an objection to further testimony along that line. This evidence dealt with a collateral matter. Whether it should be received rested in the sound discretion of the trial court and we do not think the court in so restricting it abused its discretion.[1]

At the trial, Sedam testified that in the latter part of December, 1939, he left instructions with his attorney to file a complaint for divorce; that the suit was never instituted; that he advised his attorney that he would be back in a day or so and sign the complaint but the matter passed out of his mind. He offered in evidence a written statement which he gave to his attorney as information upon which to base the divorce proceeding. The court sustained an objection to the admission of the statement. This likewise was a collateral matter and we think the court did not abuse its discretion in limiting the evidence respecting it. Furthermore, the statement was a self-serving declaration and was, therefore, inadmissible.[2]

Finally, Sedam contends that the evidence failed to establish that he persuaded

[1] See Dempsey v. Baltimore & O. R. Co., D.C.Pa., 219 F. 619, 620; Chesterfield Mfg. Co. v. Leota Cotton Mills, 4 Cir., 194 F. 358, 359; Lucas v. Ganley Bros., 166 Minn. 7, 206 N.W. 934, 936.

[2] 20 Am.Jur., 470, § 558; Shreve v. United States, 9 Cir., 103 F.2d 796, 806; Busch v. United States, 8 Cir., 52 F.2d 79, 88.

or induced Miss Mason to accompany him form Idaho Falls to Salt Lake City and Los Angeles with intent to induce her to engage in any immoral practice.

The evidence established that Sedam had carried on an ardent courtship with Miss Mason during two periods between October, 1939, and January, 1940; that he falsely represented to her that he had secured a divorce decree that would become final on December 1, 1939; that he repeatedly proposed marriage to her when he knew marriage was legally impossible; that he represented to her that they would go to Yuma and be married; that he first took her to Salt Lake City and later to Los Angeles, registered as man and wife under assumed names, occupied the same room, and repeatedly importuned her to engage in sexual intercourse with him, and at one time actually engaged in sexual intercourse with her. These facts fully warranted the jury in inferring that Sedam induced Miss Mason to accompany him from Pocatello to Salt Lake City and from there to Los Angeles with the purpose and intent to induce her to engage in sexual intercourse with him. We find no error in the record.

The judgment is affirmed.