## THOMAS v. UNITED STATES.

### No. 3246.

Circuit Court of Appeals, Tenth Circuit.

March 16, 1946.

W. L. Coffey, of Tulsa, Okl., for appellant.

Lawrence E. Todd, Asst. U. S. Atty., of Tulsa, Okl. (Whit Y. Mauzy, U. S. Atty., of Tulsa, Okl., on the brief), for appellee.

Before PHILLIPS, BRATTON, and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

Appellant was indicted, tried and convicted on two counts of an indictment charging him with unlawfully engaging in the business of a distiller with intent to defraud the United States of the tax on the spirits distilled by him, and with unlawfully making and fermenting mash fit for the distillation of liquor, in violation of the Internal Revenue Laws, 26 U.S.C.A. Int. Rev.Code, §§ 2833 and 2834. To reverse the judgment and sentence of the trial court, appellant contends (1) that the evidence upon which he was convicted was obtained by an illegal search of appellant's premises; (2) that comments made by the court in the presence of the jury venire before the case was called for trial, was highly prejudicial; and (3) that the evidence is insufficient to sustain the verdict of the jury.

The only evidence introduced at the hearing on the motion to suppress, and in the trial of the case, was the testimony of Henry R. Smith, the Alcohol Tax Unit Investigator, who made the arrest and search. His testimony establishes the following facts: Based upon information that appellant, Thomas, was making whiskey, Smith and another A. T. U. investigator proceeded to a tract of land owned by appellant in the Mohawk Addition, about six miles Northeast of Tulsa, Oklahoma for the purpose of making an investigation. There they found a "hog lot" enclosed by an unlocked gate and fence, inside of which was a padlocked "hog shed." The odor of mash was detected but the officers made no attempt to enter the shed. They proceeded to a house about 150 yards distant where they found Alonzo Reed, who advised them he was a hired hand and that the house belonged to Thomas. They returned to Tulsa, arrested Thomas who lived at the Elks' Club there, and returned with him to the premises. Thomas did not have a key to the padlock on the door of the shed, but stated "that he knew the man that had it" and "if the officers would let him take the car he would go back down town and get the man who had the key and had been cooking the whiskey." The officers offered to take Thomas to town but he refused unless permitted to return alone. Whereupon, Thomas voluntarily broke the padlock with an axe which he took from the officers' car, and the officers entered the premises. They found a fifty-five gallon drum still, twelve or fourteen barrels, including two barrels of mash, and other distilling paraphernalia. Thomas stated that he owned the thirty head of hogs in the lot, where the shed was located, and made a trip out there once a day to feed them, but said he had rented the hog shed to another man, whose identity he declined to reveal; that when he rented the shed for $20 per week he commented "that is a little high," and the man said "sure but you won't have anything to do with it." Thomas admitted that he knew there was whiskey on the premises, but "that another man put it there."

■ Although appellant owned the premises searched he did not occupy the same and they were not a part of the home curtilage, rather he lived in Tulsa approximately six miles away. Appellant's home was not invaded and the guarantees of the 4th Amendment do not extend to the premises searched. Daddio v. United States, 2 Cir., 125 F.2d 924; Schnitzer v. United States, 8 Cir., 77 F.2d 233; Williams v. United States, 10 Cir., 66 F.2d 868; Coon v. United States, 10 Cir., 36 F.2d 164; Dulek v. United States, 6 Cir., 16 F.2d 275; Tritico v. United States, 5 Cir., 4 F.2d 664; Fryar v. United States, 6 Cir., 3 F.2d 598. Furthermore, appellant admitted knowing there was whiskey in the hog shed and when he was not allowed to return to town to obtain the key, he voluntarily broke the lock with an axe so the officers could enter the premises. It is, of course, axiomatic that one may consent to a search without a warrant and it is clear that the appellant did so. Ruhl v. United States, 10 Cir., 148 F.2d 173; Turner v. United States, 10 Cir., 73 F.2d 838.

■ After hearing evidence on the motion to suppress, the court stated: "There is no reason why the officers could not have obtained a search warrant in this case; they had sufficient information. * * * Now, this defendant is no doubt guilty; and sustaining this motion permits a guilty person to avoid prosecution in this case. But * * * I am going to sustain the motion." However, after a study of authorities presented by appellee, the court overruled the motion to suppress and the jury was impaneled to try the case. Appellant contends that the jury venire seated in the back of the court room heard the statement of the court that the appellant was "no doubt guilty"; that the statement was highly prejudicial and prevented him from having a fair trial, but he made no objection to the court's statement when it was uttered; he did not challenge the ve-

nire and made no inquiry of any of the prospective jurors concerning whether they heard the statement or formed any opinion from it. The matter was not brought to the attention of the court until a motion for new trial after a verdict of guilty had been returned. There is nothing in the record to indicate that the jury heard the remarks of the court or that hearing them they formed any opinion concerning the guilt or innocence of the appellant. We cannot assume on appeal that the remarks of the court were prejudicial or deprived appellant of a fair trial in the absence of some affirmative showing to that effect. Cf. United States v. Wernecke, 7 Cir., 138 F.2d 561; Sedam v. United States, 10 Cir., 116 F.2d 80; Luccioni v. United States, 6 Cir., 41 F.2d 741; Baldwin v. United States, 9 Cir., 72 F.2d 810.

There is no direct evidence to connect appellant with the ownership and operation of the still, but the jury was asked to believe that although appellant owned the premises, knew there was whiskey "cooking" thereon, and made daily trips to his property to feed the hogs, he was innocent of the offense charged, and the guilty person was some man, whose identity he admitted knowing but which he declined to divulge. The jury chose to disbelieve such statement and based its verdict upon inferences drawn from the established facts and circumstances. We cannot say that its process of deductive reasoning was not in accordance with the prescribed legal standards. See Scott v. United States, 10 Cir., 145 F.2d 405, certiorari denied 323 U.S. 801, 65 S.Ct. 561.

The judgment is affirmed.