**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Juan G. RIOS, Defendant-Appellant.**

**No. 78–1519.**

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted July 19, 1979.

Decided Dec. 21, 1979.

Don J. Svet, Asst. U. S. Atty., Albuquerque, N. M. (R. E. Thompson, U. S. Atty., Albuquerque, N. M., on brief), for plaintiff-appellee.

Charles W. Daniels, Albuquerque, N. M. (John W. Boyd of Freedman, Boyd & Daniels, Albuquerque, N. M., on brief), for defendant-appellant.

Before HOLLOWAY, McWILLIAMS and DOYLE, Circuit Judges.

HOLLOWAY, Circuit Judge.

■ This is a direct appeal by the defendant-appellant Juan G. Rios from his conviction on each count of a three-count indictment charging Rios and Leo T. Valenzuela with conspiracy to commit offenses defined in 21 U.S.C. §§ 841(a)(1)[1] and 952(a),[2] with possession of heroin, a controlled substance, with intent to distribute, and with distribution of heroin in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (aiding and abetting). Appellant was sentenced to a term of ten years to be followed by a five year special parole term, served concurrently, as to each count.

Appellant's basic contentions on appeal are that the trial court erred in: (1) failing to grant a mistrial due to prosecutorial misconduct during closing argument; (2) refusing to give a requested jury instruction on the proper use of a coconspirator's acts and statements; (3) admitting inadmissible evidence and excluding admissible evidence; and (4) refusing to grant a pretrial motion to suppress evidence. It is convenient to highlight only a few facts initially and to discuss the remainder separately as they relate to each argument.

Appellant Rios was accused of being involved in illegal drug-related activities which culminated in the sale of heroin to government undercover agents in Las Cruces, New Mexico, on June 4, 1976. On that date agents of the Drug Enforcement Administration (DEA) along with agents of the Las Cruces Police, Metro Narcotics Division, purchased from Eddie and Albert Vega approximately one kilo (2.2 pounds) of brown powder which contained heroin. III R. 29–30. The Vega brothers, who were unindicted coconspirators, and Leo Valenzuela, who was a brother-in-law to the Vega brothers and a codefendant to appellant, were prosecuted in a New Mexico state court proceeding for offenses arising out of this incident. Subsequent to the arrest of the Vega brothers which occurred simultaneously with the sale, government agents procured a search warrant for a sixty foot mobile home in which Valenzuela resided at the time. The search uncovered approximately one kilo of brown powder containing heroin, two sets of scales one of which apparently was used for weighing the heroin, and a notebook containing notations of various transactions made. II Supp. R. 10–11; IV R. 280–82.

Following the prosecution of the Vegas in state court the brothers made a determination to testify against the appellant. At Rios' trial the Government's case was primarily constructed through the testimony of the Vega brothers and Kenneth Bonney, an immunized witness who owned the land on which the mobile home sat. IV R. 411, 438–39; V R. 473–74.

Appellant testified at his trial, admitted that he knew the parties involved in the incident, but denied all involvement in the drug transaction. The credibility of these witnesses became the most critical issue for the jury to resolve.

1. 21 U.S.C. § 841(a)(1) provides:
 Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—
 (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute or dispense, a controlled substance
 . . . .
 Controlled substances are regulated by the Attorney General under the authority vested in him by 21 U.S.C. §§ 811–12. They include the substance involved in this case—heroin. *See* 21 U.S.C. § 812 and 21 C.F.R. § 1308.11(c).

2. 21 U.S.C. § 952(a) provides:
 It shall be unlawful to import into the customs territory of the United States from any place outside thereof (but within the United States), or to import into the United States from any place outside thereof, any controlled substance in schedule I or II of subchapter I of this chapter . . . .
 The indictment alleged that the conspiracy violated 21 U.S.C. § 846, and that the defendant Rios and Valenzuela conspired to import heroin and to possess with intent to distribute and to distribute heroin. I R. 1. A conspiracy to import a controlled substance is prohibited only by 21 U.S.C. § 963. Because the language of §§ 846 and 963 is identical, the minor, technical defect in the indictment of not alleging both statutes is harmless and is no ground for dismissal of the conspiracy charge. *See United States v. Martinez*, 496 F.2d 664, 669 (5th Cir.), *cert. denied*, 419 U.S. 1051, 95 S.Ct. 627, 42 L.Ed.2d 646. There was no objection to the indictment on such grounds.

## I

*The claim of error in failing to give a limiting instruction on the use of coconspirator's statements*

We turn first to appellant's claim that the trial court erred in failing to instruct the jury on the circumstances under which it could consider the declarations of appellant's alleged coconspirators as evidence against him.

▮ Throughout the trial there was testimony concerning out-of-court statements made by certain alleged coconspirators. Initially Eddie Vega's testimony about Leo Valenzuela's out-of-court statements was admitted over defense objection without explanation by the trial court. III R. 65. Subsequently the trial court permitted a continuing objection to testimony concerning "any statements made by Mr. Juan Rios or Mr. Valenzuela."[3] Moments later, defense counsel asked the court whether it was going to apply the prior ruling to the hearsay statements of Albert Vega. After the prosecutor told the court that "[i]t's a part of the conspiracy," the testimony was admitted. III R. 85–86. Other similar statements were admitted during the Government's case-in-chief, apparently on the theory that the statements were made by coconspirators during the course and in furtherance of the conspiracy.[4]

At no time during the presentation of this testimony did defense counsel ask the district court for a cautionary instruction to the jury; nor did the trial court, *sua sponte*, give such an instruction. More importantly, however, the trial court never made an explicit determination for the record regarding the admissibility of the statements; nor did it specify the reasons for rejecting the last paragraph of the appellant's requested jury instruction concerning the proper use of coconspirators' actions and declarations.[5]

On this appeal, the Government acknowledges that the trial court never specifically instructed the jury at any time during the trial on the conditions which had to be satisfied for evidence of the acts and statements of others to be considered in deciding the guilt of appellant. Brief of the Appellee at 40. Instead it basically contends that defense counsel's request for a limiting instruction was untimely because it was not made during the course of the trial; that a general cautionary instruction at the end of the trial is "superfluous" when the independent evidence of a defendant's involvement

---

**3.** III R. 84. The appellant does not question on this appeal the testimony concerning his own out-of-court statements. Of course such a position would be untenable. *See* Fed.R.Evid. 801(d)(2)(A).

**4.** *See e. g.*, III R. 89–90, 207. In further support of his position, appellant cites portions of Eddie Vega's cross-examination in which he related inculpatory hearsay statements of the absent codefendant Valenzuela. Brief of Appellant at 39; *see e. g.*, III R. 129, 131–33, 138–39, 140–41. The Government says that arguments on this point are untenable because the appellant's counsel brought out the statements by his own cross-examination.

We agree that the appellant is not entitled to assert as grounds for his appeal some of the statements which he elicited on cross-examination. However, once his objection was made and overruled, defense counsel was entitled to treat this ruling as the law of the case and to explain or rebut the evidence which had come in over his protest. Thus he could cross-examine the adversary's witness about the contested matter or meet the testimony with other evidence which under the theory of the objection,

would be inadmissible. *See, e. g., United States v. Straughan*, 453 F.2d 422, 428 (8th Cir.); *McCormick's Handbook of the Law of Evidence* § 55 at 128–29 (2d ed. 1972 & Supp. 1978). These things he could do without *waiving* his earlier objection or his right to complain of hearsay testimony already admitted over objection.

**5.** VI R. 734. The rejected portion of the requested instruction stated (I R. 50–51):

In determining whether a conspiracy existed, the jury should consider the actions and declarations of all of the alleged participants. However, in determining whether a particular defendant was a member of the conspiracy, if any, the jury should consider only his acts and statements. He cannot be bound by the acts or declarations of other participants until it is established that a conspiracy existed, and that he was one of its members. This instruction is found in 2 E. Devitt & C. Blackmar, Federal Jury Practice and Instructions §§ 27.05 (3d ed. 1977).

in the conspiracy is "overwhelming"; and that the trial court's other instructions at the end of the trial sufficiently protected appellant's interests. Brief of Appellee at 38–41.

■ It is axiomatic that statements made by one conspirator out of the presence of other coconspirators may be used not only against the declarant but also against his coconspirators where made during the course and in furtherance of the conspiracy. See Fed.R.Evid. 801(d)(2)(E); see also United States v. Nixon, 418 U.S. 683, 701, 94 S.Ct. 3090, 41 L.Ed.2d 1039. This rule presents questions about the role of the trial court and the jury in determining the admissibility and the use of these statements. In United States v. Andrews, 585 F.2d 961 (10th Cir.), we determined that Rule 104 of the new Federal Rules of Evidence eliminated the jury's role in the admissibility decision and required the trial court to determine alone whether the statements are admissible.[6] Prior to the new rules this Circuit followed the view which required the trial court, as a preliminary matter, to determine whether the Government had introduced prima facie independent evidence showing that the conspiracy existed, that the declarant and the defendant were members of the conspiracy, and that the statement was made during the course and in furtherance of the conspiracy. Once the prima facie case had been proven, the coconspirators' declarations were conditionally admitted by the court. The statements, however, could be used by the jury

in its deliberations on the substantive offenses only if the jury found that the Government had established, beyond a reasonable doubt, the three elements enumerated above. Thus, under the former procedure, the ultimate determination of admissibility and use of the coconspirator's statements was a question for the jury. See United States v. Petersen, 611 F.2d 1313, 1328 (10th Cir. 1979).

We have recently determined that our decision in Andrews is not to be applied retroactively. United States v. Petersen, supra, at 1328–1329. This is not to say that a district court would have committed reversible error if it had followed the approach adopted by the new federal rules during the interim period between their effective date and our Andrews decision. See United States v. Mackedon, 562 F.2d 103, 105 (1st Cir.). Yet, in the absence of any significant indication that the trial judge was applying the method mandated by Rule 104 and was making the requisite determinations himself, we must assume that the court was following the former rule which required an instruction to the jury on the determinations to be made before the coconspirators' statements could be considered.[7]

To properly implement the former procedure on consideration of coconspirators' statements it was essential that the trial court instruct the jury on the conditions to be met before such evidence could be considered.[8] 1 J. Weinstein & M. Berger,

---

**6.** 585 F.2d at 965. Following the rule laid down in United States v. Petrozziello, 548 F.2d 20, 22–23 (1st Cir.), we also held that the new rules changed the quantum of proof required for the admissibility decision. Before admitting the statements under Fed.R.Evid. 801(d)(2)(E) at the close of all evidence and prior to the submission of the case to the jury, the trial court should determine under Rule 104(a) if it is "more likely than not" that the conspiracy existed, that the declarant and the defendant against whom the statement was offered were members of that conspiracy, and that the statement was made during the course and in furtherance of the conspiracy. 585 F.2d at 965–66.

**7.** Two points support this conclusion. First, appellant's trial occurred in April, 1978, and our decision in Andrews, supra, was not handed down until October, 1978. Second, the Government does not contend, nor is there any indication in the record, that the trial court was following the procedure laid out by Rule 104 in lieu of the former procedure discussed in our decision.

**8.** The reason for the insistence on an instruction was the concern that without it, the declarations would bootstrap themselves and be used as proof of the existence of the conspiracy and of the defendant's involvement in it when independent proof of these factors was a prerequisite to the use of the coconspirators' state-

Weinstein's Evidence ¶ 104[05] at 104–44.6 (1976). This type of instruction was the primary means of protecting a defendant who was charged vicariously with the out-of-court statements of another. *See Dennis v. United States,* 346 F.2d 10, 16 (10th Cir.), *rev'd on other grounds,* 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973. While we have suggested that "it is preferable to give some cautionary instruction at the time of admission of the proof, with further instructions in the final charge," *United States v. Krohn,* 573 F.2d 1382, 1387 n. 5 (10th Cir.), *cert. denied,* 436 U.S. 949, 98 S.Ct. 2857, 56 L.Ed.2d 792; *see also United States v. Pennett,* 496 F.2d 293, 296 (10th Cir.), we have only expressly required an instruction at the time the evidence was admitted or in the final charge to the jury. *See Lowther v. United States,* 455 F.2d 657, 665 (10th Cir.), *cert. denied,* 409 U.S. 857, 93 S.Ct. 139, 34 L.Ed.2d 102; *Troutman v. United States,* 100 F.2d 628, 634 (10th Cir.).

■ In the instant case, despite a request by defense counsel, no instruction was given to the jury prior to their deliberations which adequately informed them of the limitations placed on the use of the coconspirators' statements. And, as noted earlier, the trial court did not itself make the determinations under the new procedure of Rule 104 to permit consideration of the coconspirators' statements. Thus, on this record, *neither* protective procedure was followed with respect to the coconspirators' statements. It is not clear that the judge or the jury made the required determinations before those statements were considered on the defendant's guilt, as must be done. Thus we must hold that in these circumstances there was error in the procedure followed in handling the coconspirators' statements.

We are convinced that because of this error and other prejudicial errors discussed

below there must be a retrial of these charges. *See, e. g., United States v. Gonzalez,* 488 F.2d 833, 836 (2d Cir.) (combination of improper jury charge and improper summation by prosecutor required reversal). At the new trial the coconspirators' statements can be handled under the procedure of Rule 104, Fed.R.Evid., as outlined in our *Andrews* and *Petersen* cases.

## II

*The claim of prosecutorial misconduct*

Appellant Rios vigorously argues that there was prejudicial misconduct in the rebuttal argument by the prosecuting attorney. He claims there were personal attacks on defense counsel and accusations of false testimony contrived by defense counsel's investigator; that there were expressions of the prosecutor's personal belief of appellant's guilt; that facts and documents not in evidence were referred to; that there were unfounded references to prosecution witnesses being in danger; and that there were appeals to prejudice and sympathy, damaging to the appellant.

We have carefully considered the arguments complained of and must agree that there are several instances in which serious misconduct by the prosecuting attorney occurred. We turn first to the attack on defense counsel and the assertion in the Government's rebuttal argument that important defense testimony was contrived by defense counsel's investigator.

In the prosecution's case there was serious incriminatory testimony by the Vega brothers identifying appellant Rios as "El Senor," the heroin supplier. Later there was defense testimony that the Vega brothers had said instead that they got their heroin from an "El Senor" in Nogales. VI R. 545–46, 558–59. In the closing rebuttal argument the prosecuting attorney at-

---

ments. *See Glasser v. United States,* 315 U.S. 60, 74–75, 62 S.Ct. 457, 86 L.Ed. 680. We have on several occasions before *Andrews* approved of an instruction similar to the one sought by the appellant in this case. *See, e. g., United States v. Jacobson,* 578 F.2d 863, 867 (10th Cir.), *cert. denied,* 439 U.S. 932, 99 S.Ct. 324, 58

L.Ed.2d 327; *United States v. Krohn,* 573 F.2d 1382, 1387 (10th Cir.), *cert. denied,* 436 U.S. 949, 98 S.Ct. 2857, 56 L.Ed.2d 792; *United States v. Pennett,* 496 F.2d 293, 296 (10th Cir.); *Lowther v. United States,* 455 F.2d 657, 664–65 (10th Cir.), *cert. denied,* 409 U.S. 857, 93 S.Ct. 139, 34 L.Ed.2d 102.

tacked defense counsel on this point and Mr. Pfeffer, defense counsel's investigator, stating (VI R. 703–04):

> That El Senor from Nogales was put in there from Mr. Daniels, and it was put there, ladies and gentlemen of the Jury, to confuse you. And I do ask you to search your memories about that. Mr. Jesperson said that there was an El Senor in Arizona or Nogales, he might have even said Nogales, and he is also the guy that said that this fellow, Eddie Vega, was Slick Eddie.
>
> Well, you could see in his answers that that had been contrived between him and Mr. Pfeffer, the investigator, because all the other important stuff, he had written down in his notes and he pulled those dates out and said, 'This happened on that day.' Well, that El Senor and Slick Eddie and things pertaining to the Vega brothers in there, were planted there by this mysterious Mr. Pfeffer or whoever he is. (Emphasis added).

■ The effect of these assertions before the jury was that defense counsel's investigator was clearly charged with contriving the defense testimony, with no factual basis to justify such a serious charge. Similar comments have been condemned by this court recently in *United States v. Siviglia*, No. 76–1914 (10th Cir. 6/5/78) (unpublished). There counsel argued that a witness had lied because defense counsel had told him to do so. We emphatically stated (slip op. 33–34):

> We hold and conclude that the prosecutor's comments constituted gross prosecutorial misconduct requiring reversal of Siviglia's conviction, even though no trial objection was lodged.[1] The statements constitute plain error affecting substantial rights. Fed.Rules Cr.Proc. rule 52(b), 18 U.S.C.A. The prosecutor did, by these remarks, divert the trial and the attention of the jury to a trial of Siviglia's

attorney. If the witness Trower did lie, it was a matter for the jury to consider in deciding the case. The jury was not called upon to decide who, if anyone, asked him to lie. This was a collateral matter. Thus, the prosecutor's statement was both personal and vindictive directed to Siviglia's attorney, and for all practical purposes to Siviglia. Why Trower lied, if he did, had nothing to do with the guilt or innocence of Siviglia. Thus, we hold that the prosecutor's remarks were so improper that Siviglia was effectively denied a fair trial and effective assistance of counsel. (Footnote 1 contains a dissenting opinion by Judge Barrett on this issue) (Emphasis in original).

Here there was a motion for a mistrial with several objections directed to the rebuttal argument, although none specified these particular remarks.[9] In any event, in conformity with our recent *Siviglia* opinion which held such comments to be plain error, we must hold there was prejudicial error here as well.[10]

■ Second, there were remarks clearly directed at the appellant in the closing rebuttal, drawing an inference that appellant had threatened the safety of the Vega brothers who were testifying against him. There was no evidence linking the appellant to any such threats to the Vegas and the innuendo was unfounded and unfair. The comments were to the effect that the Vega brothers were in the Federal and not the State Penitentiary, and that this leads to an inference which the prosecutor would not state. VI R. 709–10. There had been testimony, which gave impetus to the innuendo in the argument, that the Vega brothers were in protective custody. (IV R. 231). But there was no evidence linking the defendant with any threat to the Vegas. Such argument has been held so prejudicial to a defendant that it requires a new trial.

---

9. This motion was made after the arguments, apparently due to some agreement between counsel. VI R. 712.

10. In connection with the reasoning of the *Siviglia* opinion, we note that § 5.8, American Bar

Association Standards, *The Prosecution Function*, likewise requires that the prosecutor refrain from argument which would divert the jury from its duty to decide the case on the evidence.

*United States v. Peak*, 498 F.2d 1337, 1339 (6th Cir.); *United States v. Hayward*, 136 U.S.App.D.C. 300, 305, 420 F.2d 142, 147 (D.C. Cir.); *Hall v. United States*, 419 F.2d 582 (5th Cir.). Where so much depended on the credibility of the appellant's testimony and that of the Vegas, we must hold that the unfounded remarks were prejudicial error.[11]

■ Third, there was a strong statement of the prosecuting attorney's conclusion that the appellant was a large dealer in heroin. In the rebuttal argument the prosecutor said (VI R. 710):

> Now, Eddie Vega, in his testimony, and I think maybe Albert said that there was always a Mr. Big in the heroin business, and that he takes the profits and the little guys go to jail or words to that effect. Albert said that he had done enough time for other people, and *in this case, I think that you have sitting before you a genuine certified Mr. Big in the heroin business, and he is the Defendant, Juan G. Rios*. (Emphasis added).

We must agree that the effect of this rebuttal argument was to impress the jury with the prosecuting attorney's personal conclusion that the appellant was guilty. Such remarks expressing the personal opinion of the prosecuting attorney have been emphatically disapproved. *See, e. g., United States v. Latimer*, 511 F.2d 498, 503 (10th Cir.); *United States v. Ludwig*, 508 F.2d 140, 143 (10th Cir.); *United States v. Coppola*, 479 F.2d 1153, 1163 (10th Cir.) (prosecutor's statement of opinion not only violates the canon but is also invalid for he is not a witness); *United States v. Martinez*, 487 F.2d 973, 977 (10th Cir.); *see generally United States v. Berger*, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314; ABA Standards, *The Prosecution Function* § 5.8(b).

The Government argues in several instances that the arguments merely responded to defense counsel. Beside not being convinced of this from the record, in any event we have made it clear that "[w]e can give no comfort to the proposition that unprofessional conduct upon the part of defense counsel opens the door to similar conduct by the government counsel." *United States v. Ludwig, supra*, 508 F.2d at 143. The obvious remedy was a government objection to any improper defense argument. *Id.* at 143.

■ We must view these instances in the context of this record. The credibility of the accomplices, of the Vega brothers who were addicts with felony convictions, and of the appellant who testified and denied his presence at the crucial transaction, was critical. While the Vegas testified that the appellant was close by in a pickup truck during the consummation of the heroin transaction and at the time of their arrest, the government agents then present testified that they did not see the appellant, Valenzuela, or a pickup truck.

Thus the Vegas' testimony which placed the appellant at the mobile home selling the heroin and at the scene of delivery was crucial to the Government's case and credibility was the controlling issue. In such a case, with so much riding on the credibility of the appellant, and in view of the errors discussed, we must hold that the prosecutorial misconduct was prejudicial error which denied appellant a fair trial.

## III

### *The Fourth Amendment Claim*

Prior to trial the appellant moved to suppress, *inter alia*, the heroin that was seized by government agents from the mobile home in which the codefendant Valenzuela had been living. Rios claimed that the affidavit for the state search warrant was defective because it failed to establish probable cause for the search of the mobile home and it contained "material and intentional misrepresentations of fact." I R. 9–10; II R. 58–62.

11. There was a specific objection to these comments in the motion for a mistrial. VI R. 732–33.

At the pretrial evidentiary hearing the Government challenged the appellant's standing to raise the Fourth Amendment claim. II R. 4, 65–67. Defense counsel argued that Rios had standing to raise the claim because he had a proprietary interest in the mobile home and he was charged with a possessory offense which implicated the "automatic standing" rule of *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697. I R. 9; II R. 63–64, 68–69. The district court denied the motion after concluding that Rios did not have "a reasonable expectation of privacy" in the premises searched.[12] The evidence, which was the subject of the suppression motion, was subsequently introduced at trial over appellant's timely objection. III R. 32–33; IV R. 357; VI R. 662. On this appeal the appellant claims reversible error in the district court's denial of his motion to suppress. Brief of the Appellant at 56.

 It is well established that "[t]he proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." *Rakas v. Illinois,* 439 U.S. 128, 130–31 n. 1, 99 S.Ct. 421, 424 n. 1, 58 L.Ed.2d 387. The focus is on the individual's legitimate expectations of privacy in the area or the item subject to search or seizure. *Id.* at 138–40, 99 S.Ct. 421. Moreover, when reviewing the denial of a motion to suppress, an appellate court must accept the trial court's findings of fact unless they are "clearly erroneous," *United States v. Miles,* 449 F.2d 1272, 1274 (10th Cir.),[13] and must consider the evidence adduced at the suppression hearing and the trial[14] in the light most favorable to the Government. *Id.* Considering the evidence

in this light it tended to show the following facts.

A few weeks before the search and seizure, the appellant and the codefendant Valenzuela made an agreement for Valenzuela to purchase the mobile home involved from Rios. II R. 6, 19; VI R. 615, 637. Although it was agreed that Rios would retain legal title to the mobile home until Valenzuela had made all the payments to the bank, Valenzuela had the right to immediate and exclusive possession. II R. 6–7, 11–12; VI R. 616–17. At the time of the search no one else lived in the mobile home, kept personal clothing in it, or had a key to it except Valenzuela. II R. 9–10. Despite the evidence showing that Rios had been in the mobile home at least once, *see, e. g.,* II R. 11; IV R. 345; VI R. 617, there was nothing to indicate that he frequently used the mobile home or that he had permission to do so. II R. 11; VI R. 617.

The appellant contends that his standing to raise a Fourth Amendment claim is established by his legal ownership of the mobile home, notwithstanding the fact that he was not actually living in it at the time of the contested government action; by the "automatic standing" doctrine of *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, and by the consistent government assertion that the seized heroin was "owned" by Rios. Brief of the Appellant at 56–63. Conversely, the Government claims that the appellant lacks the requisite interest to raise a Fourth Amendment claim because he has failed to show a proprietary interest which would give him a reasonable expectation of privacy in the mobile home or its contents and because he was not charged with a possessory offense as such, but only with aiding and abetting the com-

---

12. I R. 11. It is clear that Rios did not allege or attempt to prove that he had a reasonable expectation of privacy in the items seized from the mobile home.

13. Where a motion to suppress evidence is heard, "the credibility of the witnesses and the weight to be given the evidence, together with inferences, deductions, and conclusions fairly and reasonably to be drawn from the evidence, are to be determined by the trial judge." *Unit-*

ed States v. Donahue, 442 F.2d 1315, 1316 (10th Cir.).

14. We are not limited to considering only the evidence introduced at the suppression hearing. This court may also consider any evidence properly presented at trial, even though that evidence might not have been introduced at the pretrial hearing. *United States v. Smith,* 527 F.2d 692, 694 (10th Cir.).

mission of a possessory crime and with conspiracy to commit that possessory crime. Brief of the Appellee at 56–60.

█ It is fundamental "that suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence." *Alderman v. United States*, 394 U.S. 165, 171–72, 89 S.Ct. 961, 965, 22 L.Ed.2d 176. In this case the appellant has offered nothing more in support of his position than his bare legal ownership of the mobile home.[15] While this may adequately establish a property right, he has not sustained his burden of showing that his Fourth Amendment privacy interest has been invaded.[16] For example, there is no indication on the record that he "took normal precautions to maintain his privacy— that is, precautions customarily taken by those seeking privacy." *Rakas v. Illinois, supra*, 439 U.S. at 152, 99 S.Ct. at 435 (Powell, J., concurring). Nor is there any indication that he used the mobile home in such a way as to raise a legitimate expectation of privacy. *See e. g., Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697. We conclude that the trial court's finding that appellant had no reasonable expectation of privacy in the mobile home is not clearly erroneous.[17]

Notwithstanding the lack of a legitimate expectation of privacy in the area searched, the appellant may still assert a Fourth Amendment claim if he comes within the exception recognized in *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697. This exception permits an individual to contest the legality of a search without establishing a legitimate expectation of privacy where he is charged with an offense, one element of which is possession of an item seized at the time of search.[18] *See Brown v. United States*, 411 U.S. 223, 229, 93 S.Ct. 1565, 36 L.Ed.2d 208. In the instant case we conclude that the automatic standing rule applies only to count II of the indictment—possession of heroin with intent to distribute and aiding and abetting that offense. *United States v. Oates*, 560 F.2d 45, 53–55 (2d Cir.).

█ We feel that the nature of the automatic standing exception precludes the appellant from successfully asserting it for the conspiracy charge in count I which does not require possession as an essential ele-

---

**15.** Moreover there is a question whether Rios actually "owned" the mobile home since his trial testimony indicated that the bank held the title to it. See VI R. 616. And there was testimony that Rios had the mobile home under some other name. III R. 201. Additionally, no documents were ever offered by the appellant showing his legal ownership of the mobile home.

**16.** *See United States v. Dyar*, 574 F.2d 1385, 1390 (5th Cir.), *cert. denied*, 439 U.S. 982, 99 S.Ct. 570; *United States v. Kelly*, 529 F.2d 1365, 1369 (8th Cir.); *see generally Thomas v. United States*, 154 F.2d 365, 366 (10th Cir.); 3 W. Lafave, Search and Seizure, A Treatise on the Fourth Amendment § 11.3(a) at 546 (1978).

**17.** The cases cited by the appellant, *Brown v. United States*, 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 and *Mancusi v. DeForte*, 392 U.S. 364, 88 S.Ct. 2120, 20 L.Ed.2d 1154, do not require a different result. In *Brown* the Supreme Court noted that the defendants had failed to assert any proprietary interest in the property searched or seized, and thus could not claim actual standing. 411 U.S. at 228, 93 S.Ct.

1565. In *Mancusi* the Court was faced with a government search of an office which had been actively shared by the defendant with other individuals. 392 U.S. at 368–69, 88 S.Ct. 2120. Such a situation is distinguishable from the present case in which the appellant was not shown to actively occupy or use the area searched.

**18.** Although the Supreme Court has indicated that the continued validity of this "automatic standing" rule is now open for re-evaluation, *see, e. g., Rakas v. Illinois, supra*, 439 U.S. at 135 n. 4, 99 S.Ct. 421; *Brown v. United States*, 411 U.S. 223, 228, 93 S.Ct. 1565, 36 L.Ed.2d 208, in view of the explicit reservation of this issue in both *Rakas* and *Brown*, we feel that such a significant step should not be undertaken by this court but left for determination by the Supreme Court. *See, e. g., United States v. Oates*, 560 F.2d 45, 53 (2d Cir.); *but see United States v. Archbold-Newball*, 554 F.2d 665, 679 (5th Cir.); *cert. denied*, 434 U.S. 1000, 98 S.Ct. 644, 54 L.Ed.2d 496; *United States v. Delguyd*, 542 F.2d 346, 350 (6th Cir.).

ment of the offense.[19] *See United States v. Rumpf*, 576 F.2d 818, 823 (10th Cir.). Likewise we feel that the exception does not apply to the charge of distribution in count III. Proof of possession of the seized heroin is not a necessary ingredient in proving the charge of distribution of the controlled substance or of aiding and abetting that substantive offense.[20] *See United States v. Turner*, 528 F.2d 143, 146 (9th Cir.), *cert. denied*, 429 U.S. 837, 97 S.Ct. 105, 50 L.Ed.2d 103; *cf. United States v. Boston*, 510 F.2d 35, 37 (9th Cir.) (denying automatic standing to a defendant charged with illegal importation of heroin); *but compare with United States v. Medina-Flores*, 477 F.2d 225, 228 (10th Cir.). Thus for the charges in both counts I and III the appellant may not assert a Fourth Amendment claim under the automatic standing rule of *Jones v. United States*.[21]

Having decided that the appellant may assert a Fourth Amendment claim only for the charge of possession of a controlled substance with intent to distribute, we turn to the claim that the state search warrant was defective. Specifically the appellant argues: (1) that the warrant was invalid because the affidavit failed to establish probable cause for a search of each individual building listed thereon; (2) that the affidavit contained a material and intentional misrepresentation of fact in that it indicated that the mobile home was connected with a phone number listed to Kenneth Bonney's Garage; and (3) that the district court committed reversible error by refusing to permit the appellant to introduce evidence on the misrepresentation issue. Brief of the Appellant at 63–69; II R. 58–62.

At the suppression hearing the district court refused to take evidence on the alleged falsity of the allegations contained in the affidavit and ruled that there was "no reason to go into it, because it's based on the face of the affidavit." II R. 45–47. In its written order denying the suppression motion, the district court also ruled "that the buildings particularly identified in the affidavit were a single 'place' within the meaning of the Fourth Amendment." I R. 11.

In describing the premises to be searched the affidavit specifically identified four separate structures—"a garage known as Kenney's Garage, a warehouse, a mobile home and a camping trailer." Additionally it provided a physical description of the premises and each structure along with a geographical description of the structures in relation to each other. II Supp. R. 4–5. The affiant, a state narcotics agent, alleged that he was told by a federal DEA undercover agent that the agent had purchased one kilo of heroin that day from the Vega brothers; that the agent had telephoned the Vega brothers that day pursuant to their request at a number which was listed to "Kenneth Bonney and the premises described above"; that Eddie Vega told the agent during the phone conversation "that he had a load of marijauan [sic] for sale and that the marijuana was present at the premises described above"; and that during the heroin sale Eddie Vega showed the agent a sample of marijuana "which came from the place of the telephone conversation." II Supp. R. 4. It was upon these allegations that a state judge found probable cause to issue a

---

**19.** Nor does possession of the heroin become an essential element of the conspiracy charge merely because it is alleged as one of the overt acts in the indictment. *See United States v. Galante*, 547 F.2d 733, 738 (2d Cir.), *cert. denied*, 431 U.S. 969, 97 S.Ct. 2930, 53 L.Ed.2d 1066.

**20.** Neither the Government nor the appellant have addressed the question of the applicability of the automatic standing rule to the distribution count.

**21.** Appellant's remaining basis for raising a Fourth Amendment violation is that

"[t]hroughout the trial, the Government maintained the position that the heroin seized was 'owned' by Rios." Brief of the Appellant at 60. Appellant's right to raise the constitutional claim is predicated on alleging and, if challenged, proving that he had a proprietary or possessory interest in the items seized. *Brown v. United States*, 411 U.S. 223, 228, 93 S.Ct. 1565, 36 L.Ed.2d 208. He did not do this at the pre-trial suppression hearing, *see* note 11, *supra*, and thus may not raise it here for the first time on appeal.

search warrant for the four structures. II Supp. R. 6.

 In view of the significant federal involvement in the incident,[22] the affidavit must satisfy federal constitutional requirements and certain provisions of Fed.R. Crim.P. 41. *See United States v. Sellers,* 483 F.2d 37, 43 (5th Cir.), *cert. denied,* 417 U.S. 908, 94 S.Ct. 2604, 41 L.Ed.2d 212. However the affidavit should be considered in a commonsense, nontechnical manner, with deference given in marginal cases to the prior determination of probable cause by the issuing authority. *Spinelli v. United States,* 393 U.S. 410, 419, 89 S.Ct. 584, 21 L.Ed.2d 637; *United States v. Ventresca,* 380 U.S. 102, 108–09, 85 S.Ct. 741, 13 L.Ed.2d 684; *United States v. DePugh,* 452 F.2d 915, 921 (10th Cir.), *cert. denied,* 407 U.S. 920, 92 S.Ct. 2452, 32 L.Ed.2d 805. Our consideration of the probable cause showing must be based solely on the facts and circumstances presented in the affidavit when application for the warrant was made. *United States v. Gibbons, supra,* 607 F.2d at 1327. Thus information which may be known to the affiant or which is subsequently revealed at a later hearing, but which was not submitted to the issuing official, is irrelevant.[23] *Aguilar v. Texas,* 378 U.S. 108, 109 n. 1, 84 S.Ct. 1509, 12 L.Ed.2d 723.

 The affidavit sought and the warrant authorized a search of four separate structures. Generally a single warrant may authorize the search of several different places or residences; however probable cause must be shown for searching each area. *See United States v. Olt,* 492 F.2d

910, 911 (6th Cir.); *United States v. Hinton,* 219 F.2d 324, 325–26 (7th Cir.); *State v. Ferrari,* 80 N.M. 714, 460 P.2d 244, 248 (1969); *see generally* 2 W. Lafave, Search and Seizure, A Treatise on the Fourth Amendment § 4.5(c) at 83 (1978). Here, however the Government argues, and the district court apparently held, that because the buildings identified in the affidavit were a "single place," it was unnecessary that probable cause be separately shown as to each structure.

Generally such a "single unit" theory has been applied in situations where a warrant was issued for a building which, from its outward appearance, could "be taken to be a single-occupancy structure and neither the affiant nor other investigating officers nor the executing officers knew or had reason to know of the structure's actual multiple-occupancy character until execution of the warrant was under way." 2 W. Lafave, Search and Seizure, A Treatise on the Fourth Amendment § 4.5(b) at 79 (1978). While there is little direct authority on point, we think that this exception to the general rule might be properly applied here since there was no indication in the affidavit that the premises were used for more than one individual's residence or business. *See Carney v. United States,* 79 F.2d 821, 822 (6th Cir.). *See also United States v. Votteller,* 544 F.2d 1355, 1364 (6th Cir.) (external indicia of independent residences).

 On this basis the sufficiency of the affidavit might be sustained. However, there remains the question of whether there was a material misrepresentation of fact in the affidavit and whether the trial court

---

**22.** Although the warrant was issued by a state judge, on a state form, on application of a state narcotics agent, and the search was apparently conducted by state agents, the federal DEA agent set up the transaction with the Vega brothers and provided the state agents with the essential information used in the affidavit for the warrant. Moreover, the DEA agent was present when the state officers obtained the warrant from the state judge and subsequently took possession of the items that had been seized from the mobile home. II R. 41–42. *See United States v. Gibbons,* 607 F.2d 1320, 1325–26 (10th Cir.).

**23.** Therefore for purposes of our review of the probable cause determination, it is irrelevant that there was an extension for Bonney's telephone in a structure other than the garage, that the phone number was the only one listed for the Bonney premises, that Valenzuela had used the telephone at the garage, or that the DEA agent was told by the Vega brothers to "ask for Leo" when he made the initial call to the phone number. *See* II R. 24–25; III R. 21; Brief of the Appellee at 62–63.

erred in refusing to permit the appellant to establish such misrepresentation at the suppression hearing. In this connection the trial court rejected the offer of the appellant to demonstrate the misrepresentations, indicating that there was no reason to go beyond the face of the affidavit. II R. 47. The appellant, however, made an offer of proof that the affiant himself would testify that the DEA agent had told him the Vega brothers were calling from a listed phone number, that they made allegations (dealing with the presence of marijuana) about the place from which the call was made, that the affiant checked the phone number and found it was listed to Kenneth Bonney's garage "which is a separate structure separately owned and occupied, and not adjoining that trailer that was searched . . . ." *Id.* at 47.[24] Prior to this offer of proof there had been evidence that the mobile home was over 300 feet from the garage where the phone was located, was not visible from the garage, and that Kenneth Bonney lived in another building about 150 feet from the garage. II R. 23.

The appellant further offered to prove that the DEA agent would testify that he had not told the affiant that the phone number from which the Vegas were calling was from a phone in the housetrailer (mobile home), that he merely told the affiant that the Vegas said they were calling from a certain number, that they had marijuana at that number, and that they did not make any reference to the marijuana being anywhere except in the structure having the phone number.[25] *Id.* at 50.

We must agree that these offers of proof called for a hearing on the claim. In *Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2674, 57 L.Ed.2d 667, the Supreme Court stated that

> [W]here defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or

with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.

*See also United States v. Harwood*, 470 F.2d 322, 324–25 (10th Cir.).

In sum, we are convinced that the appellant does not have standing to challenge the validity of the search warrant as to counts I and III. With respect to count II—alleging possession with intent to distribute—appellant has proper standing and may challenge the warrant. While we feel that the face of the affidavit sufficiently shows probable cause, there was a serious and substantial charge of material misrepresentation directed at the affidavit. In view of the substantial offers of proof made we must hold that it was error to reject those offers and that the trial court should have heard the evidence and made a determination on the claim of material misrepresentation in the affidavit in connection with the ruling on the motion to dismiss. On remand such a hearing should be held and the disposition of the motion to suppress should be reconsidered.

## IV

*Admission and Exclusion of Evidence*

Appellant's final allegation of error relates to the trial court's rulings on the admissibility of evidence offered during trial. Since these matters may emerge again on retrial, we will briefly treat these contentions.

Appellant's specific claims are that the trial court erred in admitting: (1) as prior consistent statements, evidence concerning the Vega brothers' remarks to their attorney; (2) evidence concerning the danger to prosecution witnesses who testified at ap-

---

**24.** The trailer alluded to is undoubtedly the mobile home as discussed throughout this opinion.

**25.** In this connection we note that the DEA agent's trial testimony appeared to be consist-

ent with this offer of proof. III R. 24. We do note, however, that at trial the agent testified that he called the Vegas and not that they called him from the number given.

pellant's trial; (3) evidence relating to "other wrongs" of the appellant; (4) a large set of scales on which Rios' fingerprints were found, allegedly used for weighing marijuana; (5) evidence concerning the large quantity of heroin involved in the case; (6) evidence concerning Rios' family and his birth in Mexico. Additionally he claims the trial court erred in refusing to permit testimony concerning a defense witness' opinion as to the Vega brothers' credibility. Brief of the Appellant at 43–55.

■ "The materiality and relevance of proffered evidence resides in the sound discretion of the trial court, and an appellate court is bound to uphold the decision of the trial court absent a clear abuse of discretion." *United States v. Martinez*, 487 F.2d 973, 977 (10th Cir.). Likewise, the determination of the scope of cross-examination is within the trial court's discretion. *United States v. Coppola*, 526 F.2d 764, 777 (10th Cir.); *United States v. Gant*, 487 F.2d 30, 35 (10th Cir.), *cert. denied*, 416 U.S. 941, 94 S.Ct. 1946, 40 L.Ed.2d 293.

■ Most of appellant's alleged evidentiary errors (*i. e.*, #'s 3–6) may be disposed of by reference to these rules. Appellant's claim of improper hearsay evidence (# 1) is governed by Fed.R.Evid. 801(d)(1)(B). Under this rule, it is unnecessary for a witness' consistent statements to have been made prior to the statements which have been used to impeach him. *See United States v. Scholle*, 553 F.2d 1109, 1121–22 (8th Cir.), *cert. denied*, 434 U.S. 940, 98 S.Ct. 432, 54 L.Ed.2d 300. The district court did not abuse its discretion in permitting the jury to hear both the consistent and inconsistent statements in order to facilitate their evaluation of the Vega brothers' credibility. *See also United States v. Herring*, 582 F.2d 535, 541 (10th Cir.).

More troublesome are the alleged errors relating to the admission of evidence concerning the danger to the prosecution witnesses and the limitation of opinion evidence about the Vegas' reputations. At various points during the trial there was testimony about the Vegas being in protective custody because of some threats which had been made against their lives. See IV R. 224–25, 231–32; VI R. 559. Many of these statements, however, came in response to defense counsel's questions.[26] Moreover, of the three instances which appellant cites involving questions by the prosecution, *see* IV R. 266–68; V R. 484; VI R. 559, only one of them was heard by the jury. This single statement which was objected to by defense counsel was to the effect that it was dangerous to be a government witness who cooperates with the prosecution. VI R. 859.

■ Generally references to threats or danger to prosecution witnesses are improper unless admissible testimony is offered connecting the defendant with the threats or danger. *See, e. g., United States v. Mitchell*, 556 F.2d 371, 379–80 (6th Cir.), *cert. denied*, 434 U.S. 925, 98 S.Ct. 406, 54 L.Ed.2d 284; *United States v. Davis*, 487 F.2d 112, 125–26 (5th Cir.), *cert. denied*, 415 U.S. 981, 94 S.Ct. 1573, 39 L.Ed.2d 878. Even evidence showing that the witness is in protective custody may be prejudicial to the defendant. *See United States v. Partin*, 552 F.2d 621, 645 (5th Cir.); *United States v. Librach*, 520 F.2d 550, 554 n. 4 (8th Cir.). However, in the instances where defense counsel has raised the matter initially, he may not be heard to complain of it on appeal. *See United States v. Riebold*, 557 F.2d 697, 708 (10th Cir.), *cert. denied*, 434 U.S. 860, 98 S.Ct. 186, 54 L.Ed.2d 133.

While the appellant's complaints on this danger issue might be disposed of on the basis of some responses brought out by defense counsel, the problem was exacerbated by the prosecuting attorney's closing argument which improperly raised the issue, as

---

**26.** One of the most damaging statements came in response to defense counsel's question to Albert Vega about his incarceration in the same cell as his brother. Albert said that: "we got some threats, and . . . they had to move us and stuck us in the middle cell because our lives were in danger." IV R. 232. Defense counsel did not object to the answer as being non-responsive to his question, nor did he move to strike the testimony. *See also* IV R. 224–227, 231.

discussed in Part II, *supra*.[27] On retrial, the admission of any such evidence should be limited to instances where a clear showing is made that the appellant was the source of the danger or threats.

 Rios also complains of the trial court ruling which he says precluded defense counsel from eliciting opinion testimony from a probation officer that the Vegas were not credible people. Brief of the Appellant at 53, citing VI R. 549. It is true as the appellant points out that Rule 608(a), Fed.R.Evid., permits the credibility of a witness to be "attacked or supported by evidence in the form of opinion or reputation." Moreover, a defendant must be given "[g]reat leeway" in his effort to impeach an accomplice, who has become a government witness, because "the incriminating testimony of an accomplice whose credibility is accepted is almost hopelessly damaging to the defense." *United States v. Harris*, 462 F.2d 1033, 1035 (10th Cir.). *See also United States v. Smolar*, 557 F.2d 13, 21 (1st Cir.), *cert. denied*, 434 U.S. 971, 98 S.Ct. 523, 54 L.Ed.2d 461.

We would agree with appellant's theory that such impeachment evidence should be admitted under the rule. However, there was no abuse of discretion in excluding the evidence here since the questions actually posed did not deal with an opinion about specific witnesses in this case. And in any event appellant's counsel appears not to have pursued the matter by proper questioning. VI R. 550–51; 567–68. On retrial we assume that the trial court will admit such reputation or opinion evidence of character under the rule, if properly presented as to specific witnesses.

In conclusion, for the reasons stated we are convinced there should be a further hearing on the motion to suppress and a new trial, due to prejudicial errors which cannot be dismissed. Accordingly the judgment is reversed and the cause is remanded for further proceedings in accord with this opinion.

---

**27.** As discussed earlier, see Part II, *supra*, we are convinced that when the Government's closing argument was made, a prejudicial error *did* occur with respect to the alleged threats of appellant to witnesses. As noted above, there was a clear innuendo that the appellant was the source of threats to the Vegas. In view of the lack of any proper basis for raising the issue against appellant, the innuendo was prejudicial.