790 F.2d 1063
 Antoinette Connie ANELA, et al.
v.
CITY OF WILDWOOD, et al.
Maureen McDonnell COLE, et al.
v.
CITY OF WILDWOOD, et al.
Roxann Cox COLE
v.
CITY OF WILDWOOD, et al.
Appeal of Antoinette Connie ANELA, Angela DiPietro, Maureen
McDonnell, Lisa Tortis Cole, Gina Bucceri and
Roxann Cox Cole.
 No. 85-5455.
 United States Court of Appeals,
Third Circuit.
 Submitted Under Third Circuit Rule 12(6)
March 6, 1986.
Decided May 22, 1986.
 
 William S. Greenberg, James F. Schwerin, Greenberg & Prior, Princeton, N.J., for appellants.
 Raymond A. Batten, Avalon, N.J., for Ralph Sheets.
 Keith G. Von Glahn, Wilson, Elser, Moskowitz, Edelman & Dicker, Newark, N.J., for Michael Nicely, Gary Sicilia, and William Celinski.
 Gerard H. Hanson, Marilyn S. Silvia, Brener, Wallack & Hill, Princeton, N.J., for City of Wildwood.
 Before GIBBONS, BECKER and ROSENN, Circuit Judges.
 OPINION OF THE COURT
 ROSENN, Circuit Judge.
 
 
 1
 The six appellants in this case are young women who brought a Civil Rights Act lawsuit under 42 U.S.C. Sec. 1983 (1982) against the City of Wildwood, its chief of police, and several employees of that City's police department as a result of their arrest and detention for violating the City's anti-noise ordinance. The arrest occurred at about 11:15 P.M. on July 3, 1981, and the plaintiffs were detained in holding cells in the police station until their hearing at 11:00 the next morning. Their complaint raised a number of federal constitutional claims. The trial court dismissed several counts prior to trial, and at the close of their case granted the defendants' Federal Rule of Civil Procedure 50 motion for a directed verdict. The plaintiffs moved for a new trial, and when that motion was denied, they appealed. We affirm in part, reverse in part, and remand for further proceedings.
 
 I.
 
 2
 In the summer of 1981, the plaintiffs and four other persons leased a portion of a house in Wildwood. On July 3, 1981, at about 11:15 P.M., three police officers of the City of Wildwood entered the leased premises, placed the six plaintiffs and four others under arrest for loud radio playing, and carted them off to the police station. Nine of the ten persons detained were young females, ranging in ages from 17 to 20 years; they were placed in three cells, three persons to a cell. The one male who had been arrested provided the sum of $200 in cash and was released. He returned later with about $700 in an unsuccessful attempt to obtain the release of the others on bail. The female arrestees, including the plaintiffs, were held in the cells until 11:00 the following morning.
 
 
 3
 Plaintiffs filed three section 1983 suits in the United States District Court for the District of New Jersey, which were consolidated by order of the court. They alleged that the length and condition of their confinement violated their fourteenth amendment rights, that the release of the one male arrestee on bail violated their rights to equal protection, and that their arrest without probable cause violated the fourth and fourteenth amendments. They also alleged various pendent state tort claims.
 
 
 4
 Through a series of summary judgment orders, the court dismissed various claims, including the due process claim based on jail conditions. The court dismissed all claims against the City of Wildwood except for the due process claim based on the length of the plaintiffs' detention. It dismissed this claim as to the individual defendants on the ground that they enjoyed qualified immunity as officials exercising discretionary functions.
 
 
 5
 Thereafter, the case went to trial on two issues, the due process claim against the City based on the length of detention and the equal protection claim against the individual defendants. When the plaintiffs rested, the City moved under Rule 50 for a directed verdict on the ground that plaintiffs had presented no evidence establishing a "policy and practice" on the part of the City resulting in the violation of plaintiffs' constitutional rights. The individual defendants also moved for a directed verdict on the grounds of insufficient evidence because the plaintiffs had not specifically identified the individuals who booked them and locked them up.
 
 
 6
 Plaintiffs' counsel then moved to reopen plaintiffs' case to permit the introduction of certain exhibits and testimony. The court did not allow the testimony, but admitted three exhibits. Two exhibits were duty rosters showing which employees of the police department were on duty during the two shifts covering the period of incarceration and the third was a bail schedule issued by a judge of the municipal court of the City of Wildwood. The court received the exhibits in evidence and considered them in ruling on the directed verdict motions. The plaintiffs made no offer of proof that any testimony would be proffered which went beyond the facts shown on the exhibits.
 
 
 7
 On appeal the plaintiffs contend, inter alia, that the City should be liable because they were held overnight on a charge of violating an ordinance instead of being released subject to a summons as provided by New Jersey law. They also assert that because a male who was arrested with them was given the opportunity to post bail and was released immediately, their rights to equal protection under the fourteenth amendment were infringed. As totheir fourth amendment count alleging their arrest without probable cause, they claim that the district court erred in ruling that their guilty pleas in municipal court to a violation of the city ordinance collaterally estopped them from raising the issue. Finally, the plaintiffs contend that the district court erred in holding that the conditions of the holding cells in which the plaintiffs were confined did not violate their personal liberty rights protected by the fourteenth amendment.[1]
 
 II.
 
 8
 We first turn to the issue of detention. Wildwood attempted to justify the detention of the plaintiffs on the basis of a bail policy statement prepared by the Judge of the Municipal Court of the city of Wildwood. The trial court ruled that the Judge of the Municipal Court, in judicially adopting a bail policy, acted independent of the township's governing body. See Kagan v. Caroselli, 30 N.J. 371, 377, 153 A.2d 17 (1959). In rejecting plaintiffs' motion for reconsideration of the order denying a new trial, the district court held that the plaintiffs had not proven that the allegedly illegal bail policy was one emanating from the City. The court concluded that the policy was not the City's but was the State's "per the Municipal Court Judge."In Monell v. Department of Social Services of City of New York 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court stated that a municipality cannot be held liable "solely because it employs a tortfeasor--or, in other words, a municipality cannot be held liable under Sec. 1983 on a respondeat superior theory." Id. at 691, 98 S.Ct. at 2036 (emphasis in original). Instead, the Court held, "it is when execution of a government's policy or custom ... inflicts the injury that the Government as an entity is responsible under Sec. 1983." Id. at 694, 98 S.Ct. at 2037-2038. The plaintiffs were therefore required to establish either (1) the existence of an officially promulgated authority, or (2) that the practices of city officials causing the alleged deprivation were "so permanent and well-settled" as to have the "force of law." Id. at 691, 98 S.Ct. at 2036.
 
 
 9
 The New Jersey Supreme Court, pursuant to the authority of the New Jersey Constitution, promulgated Rule 3:4-1(b), Rules Governing Criminal Practice (1985), which has the force of law in the area of court procedure. See George Siegler Co. v. Norton, 8 N.J. 374, 86 A.2d 8, 12 (1952). The Rule requires a person making an arrest without a warrant to take the arrested person to the nearest committing judge and file a complaint forthwith, and either issue a warrant thereon or, if the person taking the complaint has reason to believe that the defendant will appear in response to a summons, cause a summons to issue. The Rule further provides that when minor offenses are charged, the officers in charge of the police station shall, after completion of the post-arrest identification procedures required by law, "issue a summons to [the arrestee] and release him in lieu of continued detention unless he determines that any of the conditions set forth in subparagraph (c)" apply, in which event the officer in charge shall have the discretion not to issue a summons. Rule 3:4-1(b).[2]
 
 
 10
 None of the conditions of Rule 3:4-1(c), permitting the stationhouse chief in his discretion to forego issuing a summons after all post-arrest procedures were complete, applied here. No violence, drugs, or alcohol was involved. These defendants were arrested for the minor non-indictable offense of playing their radio loudly in their own home.
 
 
 11
 Wildwood contended, however, that New Jersey Rule 3:4-1 is irrelevant because the procedure under which they routinely detained persons overnight for minor offenses without issuing a summons was mandated by the "Cash Bail Schedule" established on order of the Wildwood municipal judge. The district court reasoned that compliance with the bail schedule could not amount to official municipal policy because "the municipal courts of the State of New Jersey and the rules controlling them are promulgated by the New Jersey Supreme Court and are not within the control ... of the municipal authorities." The district court also noted in its decision rejecting plaintiffs' motion for reconsideration of the order denying a new trial, "nothing in the New Jersey Court rules mandated that the City pursue a contrary policy."
 
 
 12
 Yet, Rule 3:4-1 specifically and unequivocally required the City to pursue a contrary policy. It applied statewide, provided carefully drafted procedures to protect the legal rights of arrestees, and therefore imposed a duty upon Wildwood to issue summonses to these plaintiffs after the completion of the post-identification procedures, rather than to confine them in cells overnight. Accordingly, the City of Wildwood's routine noncompliance with the controlling Rule 3:4-1 "could be ascribed to municipal decisionmakers," City of Oklahoma City v. Tuttle, --- U.S. ---, ---, 105 S.Ct. 2427, 2435, 85 L.Ed.2d 791 (1985), and amounted to a "policy" under Monell for purposes of section 1983 liability.
 
 
 13
 The Supreme Court has not fully developed the meaning of "policy" in this context, but it is sufficient that the wrong results from a practice--not an isolated act--that is attributable to a municipal policy maker. See City of Oklahoma City, --- U.S. at ---, 105 SCt. at 2435. The offending practice need not have the city's formal approval. Monell, 436 U.S. at 691, 98 S.Ct. at 2036. In this case, the City engaged in an offending practice: it acknowledges that it routinely followed the repugnant bail schedule and ignored Rule 3:4-1 when booking arrestees. This blatant and routine disregard by the city police of an applicable legal procedure designed to preserve the right of citizens detained in their custody amounts to a "policy" as construed by Monell. At the very least, it amounts to a practice "so permanent and well settled" as to have "the force of law" and is ascribable to the municipal decisionmakers. Id.[3]
 
 
 14
 The issuance of a bail schedule by the municipal court does not excuse City officials from complying with the New Jersey Supreme Court's rule. Private citizens are presumed to know the law, and no less should be expected of public officials when they detain and confine persons. See North Laramie Land Co. v. Hoffman, 268 U.S. 276, 283, 45 S.Ct. 491, 494, 69 L.Ed. 953 (1924) ("All persons are charged with knowledge of the provisions of statutes and must take note of the procedure adopted by them...."). The City established a practice contrary to Rule 3:4-1 and must bear responsibility therefor.[4] It was therefore error to direct a verdict in favor of the City on this issue.
 
 III.
 
 15
 The fundament for plaintiffs' denial of equal protection claim is the grant of bail to the only male defendant arrested and the denial of bail to the females. This contention of the plaintiffs does not require any extensive discussion despite the alleged gender discrimination.
 
 
 16
 The district court dismissed the equal protection claim solely on the basis that there was insufficient evidence to identify the specific police officers responsible for detaining and confining those plaintiffs. The police log sheets admitted into evidence in response to plaintiffs' motion to reopen the case did not indicate which officers actually dealt with the plaintiffs. Plaintiffs in section 1983 suits must identify defendants with greater specificity than plaintiffs provided here.
 
 
 17
 In Rizzo v. Goode, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976), plaintiffs alleged civil rights abuses by the Philadelphia police. They named defendants who had not personally committed any abuses or been responsible for policies causing them. The Supreme Court held that such defendants could not be held liable under section 1983 merely because they were members of a group of which some other members were guilty of abuses. Id. at 370-71, 96 S.Ct. at 604. Similarly, the court in Fisher v. Washington Metropolitan Area Transit Authority, 690 F.2d 1133 (4th Cir.1982), held that a county sheriff was not per se liable for violations of a plaintiff's constitutional rights merely because the plaintiff was in a jail for which he was responsible. Without evidence of the sheriff's participation in the events of the prisoner's detention, "[h]e cannot be held liable vicariously under Sec. 1983 for any conduct of his subordinates. Vinnedge v. Gibbs, 550 F.2d 926 (4th Cir.1977). Neither could he be held liable on the basis of a failure adequately to supervise or control any conduct that directly caused the specific deprivation charged." Id. at 1142-43.
 
 
 18
 In the instant case, the evidence at most establishes that the six individual defendants, among others, were on duty during the shifts in question. The evidence establishes that Officers Mitchell and Robinson, the arresting officers, did not participate in booking the plaintiffs. Two defendants were civilian dispatchers, and no evidence suggests that the dispatchers had any duties with respect to booking and detention. There is evidence that the other individual defendants were on duty, but no evidence as to where or in what capacity. Looking at the evidence of record in the light most favorable to the plaintiffs, we conclude that the trial court properly granted the motion for a directed verdict in favor of the individual defendants.
 
 IV.
 
 19
 In their complaint, plaintiffs asserted that they were arrested without probable cause in violation of their fourth amendment rights. They identified the arresting officers as Mitchell and Robinson. In an interlocutory order, the district court dismissed this claim on the ground that plaintiffs had pled guilty in the city municipal court on the morning after their overnight detention. The guilty plea, the court held, "far more than an adjudicated conviction ... is a conclusive admission that one committed the crime charged and, therefore, that probable cause for arrest existed." The court, however, perceived at once that a guilty plea may not be conclusive for it qualified its statement: "While, of course, one may plead guilty for reasons of convenience rather than guilt, by so doing one necessarily imperils his right to later claim innocence."
 
 
 20
 The district court correctly ruled that defendants in a section 1983 suit can raise the issue of collateral estoppel where the plaintiffs attempted to relitigate in federal court issues decided against them in state criminal proceedings. See Allen v. McCurry, 449 U.S. 90, 101, 101 S.Ct. 411, 418, 66 L.Ed.2d 308 (1980). This does not end the matter, however. The federal court, in determining the collateral estoppel effect of a state court proceeding, should apply the law of the state where the criminal proceeding took place and also ascertain whether the party against whom the estoppel is asserted had a full and fair opportunity to litigate the issue decided in the state court. See Bower v. O'Hara, 759 F.2d 1117, 1124 (3d Cir.1985).
 
 
 21
 In Matter of Tanelli, 194 N.J.Super. 492, 477 A.2d 394, certif. denied, 99 N.J. 181, 491 A.2d 686 (1984), the New Jersey Superior Court noted that under New Jersey law the doctrine of collateral estoppel could be applied in a civil proceeding where the facts at issue had been litigated in a prior criminal conviction for an indictable offense, but a conviction for a non-indictable offense could not be so used. "To be sure, in many cases inconsequential non-indictable offenses are adjudicated informally by a plea of guilty or a brief trial in the municipal court. In such a case collateral estoppel would not be applied." Id. at 397. The ruling of the court in Tanelli is consistent with this court's interpretation of the Restatement (Second) of Judgments which does not give collateral estoppel effect to guilty pleas, but requires that the issue be "actually litigated and determined by a valid and final judgment." Bower v. O'Hara, 759 F.2d at 1126 (emphasis in original) (citing Restatement (Second) of Judgments Sec. 27 (1982)).
 
 
 22
 Because the plaintiffs' pleas of guilty in this case were to a non-indictable offense where the fourth amendment issues of fact were never subjected to an adversary contest leading to a judicial determination, it was error to hold that under New Jersey law the plaintiffs were estopped from raising their fourth amendment claims in the federal civil litigation.
 
 V.
 
 23
 The district court also held that the conditions of the plaintiffs' confinement did not amount to punishment and therefore did not violate their rights. The fourteenth amendment protects pre-trial detainees from punishment prior to a determination of guilt. Bell v. Wolfish, 441 U.S. 520, 535, 99 S.Ct. 1861, 1871-72, 60 L.Ed.2d 447 (1979). Conditions of incarceration that are harsh, arbitrary, and unrelated to a legitimate governmental objective constitute punishment, id. at 538, 99 S.Ct. at 1873, as does compelling detainees to "endure genuine privations and hardship over an extended period of time...." Id. at 542, 99 S.Ct. at 1876. Courts have held conditions superior to those in the instant case to be unconstitutional for pre-trial detainees. In LaReau v. Mansion, 651 F.2d 96 (2d Cir.1981), the court held that requiring prisoners to sleep on mattresses on the floor constituted punishment "without regard to the number of days for which a prisoner is so confined." Id. at 105. In Union County Jail Inmates v. DiBuono, 713 F.2d 984, 996-97 (3d Cir.1983), cert. denied, 465 U.S. 1102, 104 S.Ct. 1600, 80 L.Ed.2d 130 (1984), this court commented that the "unsanitary and humiliating" practice of forcing detainees to sleep on mattresses on the floor does not pass constitutional muster.
 
 
 24
 In the instant case, non-disruptive, non-violent, non-alcoholic young women, without any behavioral problems except for the allegation of participating in loud radio playing in their home, were confined in jail cells through the night until almost noon of the next day without drinking water, food, or sleeping facilities. The situation might have had more serious results had one of them required food or water because of some pre-existing medical condition. Nonetheless, the evidence supports their position that the conditions imposed upon them constituted privation and punishment in violation of the fourteenth amendment.
 
 
 25
 We conclude that the City of Wildwood may be held liable under Monell for the conditions of plaintiffs' confinement. Even if the practices with respect to jail conditions also were followed without formal city action, it appears that they were the norm. The description of the cells revealed a long-standing condition that had become an acceptable standard and practice for the City. The City offered no evidence rebutting the absence of beds or even mattresses, or its failure to provide food or drinking water. Under the circumstances, these detention conditions constituted a City custom or usage "even though such a custom has not received formal approval through the body's official decision making channels." Monell, 436 U.S. at 691, 98 S.Ct. at 2036. We therefore hold that the district court also erred in ordering summary judgment for the City on this issue.
 
 VI.
 
 26
 In sum, the district court properly denied plaintiffs' motion to reopen the case for additional testimony and committed no error in granting the motion for a directed verdict in favor of the individual defendants on plaintiffs' denial of equal protection claim. The court, however, erred in dismissing plaintiffs' fourth amendment claims on the ground of collateral estoppel.
 
 
 27
 We hold that the practice of the police officers of the City of Wildwood in routinely following a bail schedule established by the City municipal judge in violation of a rule of the New Jersey Supreme Court designed to preserve the right of citizens detained in their custody is attributable to the City. The district court therefore erred in directing a verdict in favor of the City of Wildwood on this issue. Finally, we conclude that it was error to enter summary judgment for the City on the conditions of the plaintiffs' confinement.
 
 
 28
 Accordingly, the judgment in favor of the individual defendants on the equal protection claim will be affirmed. The judgment in favor of the City of Wildwood will be reversed and the case remanded for further proceedings consistent with this opinion.
 
 
 29
 The costs of the individual appellees will be taxed to the appellants. Two-thirds of the appellants' costs will be taxed to the City of Wildwood.
 
 
 30
 BECKER, Circuit Judge, dissenting in part.
 
 
 31
 I concur in parts III, IV, and V of the majority's opinion. I dissent from part II, however, because I do not believe that either the bail schedule promulgated by a Municipal Judge who was part of the New Jersey judicial system or the township's decision to follow that schedule can be deemed a municipal policy under Monell v. New York City, Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).
 
 
 32
 Under Monell, a municipality cannot be held liable for the constitutional torts of its employees unless the plaintiffs can establish that the alleged constitutional violation was either (1) part of an officially promulgated policy, or (2) a practice of city officials "so permanent and well-settled" as to have the "force of law." 436 U.S. at 691, 98 S.Ct. at 2036. In this case, the Wildwood police detained the plaintiffs pursuant to a bail schedule that authorized routine overnight detention for minor offenses without the issuance of a summons. This schedule was established by order of a Wildwood Municipal Judge. The district court held that, because the Municipal Judge was not a part of the municipal government, but rather a part of the state court system, the bail schedule could not be considered a policy of the City of Wildwood: "the municipal courts of the State of New Jersey and the rules controlling them are promulgated by the New Jersey Supreme Court and are not within the control or variation ... of the municipal authorities." Joint App. at 321. The district court therefore found that the City of Wildwood could not be held liable under Monell. I agree.
 
 
 33
 The majority apparently accepts the district court's view that, because the Municipal Judge is not a city employee, his promulgation of the bail schedule cannot be found to be a city policy or practice. The majority maintains, however, that the city's decision to follow the schedule was a policy that suffices for liability under Monell. Although a municipality's obedience to an order of a state court would not ordinarily be sufficient to support municipal liability, the majority holds that such obedience is enough in this case because the Municipal Judge's order was blatantly illegal. In support of its position, the majority points to Rule 3:4-1, Rules Governing Criminal Practice (1985), promulgated by the New Jersey Supreme Court, which requires that persons charged with minor offenses be released in lieu of continued detention, except under certain defined circumstances not applicable to the plaintiffs in this case. Observing that the Municipal Judge's bail schedule conflicts with this rule of the state Supreme Court, the majority concludes that the decision of the city police to follow the schedule was a "blatant and routine disregard ... of an applicable procedure" that amounts to a policy under Monell. Maj.Op. at 1067. According to the majority, the fact that the schedule was issued by the Municipal Court does not excuse city officials because they are presumed to know that Rule 3:4-1, and not the "repugnant bail schedule," is the law to be followed. Id. at 1067.
 
 
 34
 I do not dispute the majority's finding that the Municipal Judge's bail schedule is invalid because it is in conflict with Rule 3:4-1.* Nor do I dispute the majority's conclusion that, if there had been no conflicting bail schedule, the city could be held liable for its failure to follow Rule 3:4-1. I dissent, however, because I believe that, regardless of the conflict between Rule 3:4-1 and the schedule, the City of Wildwood cannot be held responsible for obeying the order of a Municipal Judge, a fully competent state judicial official. Although it may be clear to this Court that the municipal court's schedule was invalid because it was in conflict with Supreme Court rules, it is unfair to require the Wildwood police to assess the constitutionality of the Municipal Judge's order or to discover the conflict between two state court rules.
 
 
 35
 Policemen are not lawyers, and they have a right to rely on the considerable expertise and learning of state judges. The Municipal Judge was presumably aware of Rule 3:4-1, and the Wildwood police might well have thought that he had a reason for believing that his order was valid notwithstanding the conflict with the Supreme Court rule. At any rate, there is no evidence that the Wildwood police or any other Wildwood employee knew that the Municipal Judge's bail schedule was invalid. In my view, the police should be entitled to follow the orders of a state court without first analyzing those orders to determine whether they are constitutionally sound. Cf. Michigan v. DeFillippo, 443 U.S. 31, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979) ("Society would be ill-served if its police officers took it upon themselves to determine which laws are and which are not constitutionally entitled to enforcement.").
 
 
 36
 In sum, Wildwood acted in compliance with a bail schedule promulgated by a judge whose court "is an integral part of a state-wide judicial system" and who exercises the judicial power of the State of New Jersey. Kagan v. Caroselli, 30 N.J. 371, 377, 153 A.2d 17 (1959). It can therefore not be considered responsible for a policy so as to be subject to liability under Monell. I respectfully dissent.
 
 
 
 [1]
 The plaintiffs also contend that the district court abused its discretion by denying their motions to reopen. Because the plaintiffs made no offer of proof in support of their motion that additional testimony would be proffered which went beyond the facts shown on the duty roster exhibits, we see no merit to the contention and reject it
 
 
 [2]
 Subparagraph (c) provides:
 (c) The officer in charge of the stationhouse shall have the discretion not to issue a summons to an arrested person when any of the following conditions exists:
 (1) The person has previously failed to respond to a summons:
 (2) The officer has reason to believe that the person is dangerous to himself, to others or to property;
 (3) There is one or more outstanding arrest warrants for the person;
 (4) The prosecution of the offense or offenses for which the person is arrested or the prosecution of any other offense or offenses would be jeopardized by immediate release of the person;
 (5) The person cannot provide satisfactory evidence of personal identification;
 (6) The officer has reason to believe the person will not appear in response to a summons; or
 (7) The person demands to be taken before a judge.
 
 
 [3]
 "A Sec. 1983 plaintiff thus may be able to recover from a municipality without adducing evidence of an affirmative decision by policymakers if able to prove that the challenged action was pursuant to a state 'custom or usage.' " Pembaur v. City of Cincinnati, --- U.S. ---, ---, 106 S.Ct. 1292, n. 10, 89 L.Ed.2d 452 (1986)
 
 
 [4]
 The court entered summary judgment for the city police officers on the ground of qualified immunity under Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The dissent apparently would also relieve the City from potential liability because "there is no evidence that the Wildwood police or any other Wildwood employee knew that the Municipal Judge's bail schedule was invalid." Dissent at 3. Liability of the City, however, is not predicated upon the single act of detention by the police officers but upon a settled practice or policy of the City's decisionmakers to confine arrestees charged with minor non-indictable offenses without regard to the City's duty to issue summonses after completion of post-identification procedures. When a municipality engages in a practice of confining such arrestees without issuing summonses, it should correctly inform itself of its legal duty to them
 
 
 *
 Indeed, were the judge not immune from liability, a suit might be properly maintained against him